**FILED**
U.S. DISTRICT COURT
BRUNSWICK DIV.

## In the United States District Court
## for the Southern District of Georgia

2008 JUN 20  AM 8: 04

### Brunswick Division

CLERK _____
SO. DIST. OF GA.

| | | |
|---|---|---|
| LISA M. WOODS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| GEORGIA PACIFIC CORPORATION and ANTHONY R. LEE, | : | |
| Defendants. | : | NO. CV206-190 |

### O R D E R

Plaintiff, Lisa M. Woods, filed this action against Defendants, Georgia Pacific LLC ("Georgia Pacific") and Anthony R. Lee, alleging violation of Title VII of the Civil Rights Act of 1964 ("Title VII") by Georgia Pacific, and intentional infliction of emotional distress by Georgia Pacific and Lee.[1]  Presently before the Court are Georgia Pacific's and Lee's motions for summary judgment. The Court concludes that Woods is not judicially estopped from asserting these claims and, further, that genuine issues exist as to Woods' hostile environment and retaliation claims

---

[1]  Plaintiff originally named Paul D. Ferre and Michael J. Maurer as additional Defendants in this action.  Plaintiff has voluntarily dismissed with prejudice her claims against these Defendants.  (Doc. No. 84.)

against Georgia Pacific and her intentional infliction of emotion distress claim against Lee.   Therefore, Georgia Pacific's motion will be **GRANTED IN PART and DENIED IN PART** and Lee's motion will be **DENIED**.

**FACTS**

Lisa Woods, an African-American female, was employed by Georgia Pacific from May 12, 2004, to December 11, 2006, as a swing log scale operator at Georgia Pacific's Claxton, Georgia, and Sterling, Georgia mills.   In her pro se complaint,[2] Woods alleges that she was subjected to repeated harrassment by Anthony Lee, Woods' coworker at the Sterling mill.   Woods alleges that Lee harassed her because of her race and gender, and that her employer, Georgia Pacific, failed to do anything when advised of the alleged harassment. Woods further alleges that Georgia Pacific retaliated against her for opposing the discriminatory conduct.

According to Woods, the alleged harrassment began in November 2004.   Woods alleges that the first incident

---

[2] Plaintiff originally filed her complaint pro se on August 28, 2006.   On January 16, 2007, the Court granted Alan P. Taylor's request to appear pro hac vice on behalf of Plaintiff.   (See Doc. No. 21.)

2

occurred when a 30 load shortage was discovered during an inventory she conducted. (Woods Depo. 136:15-18.) Woods contends that Lee asked her whether she was bribed to take the missing 30 loads. (Id.) Woods alleges that Lee subjected her to harrassment based on her race and sex throughout her employment with Georgia Pacific. Additionally, Woods alleges that Lee humiliated and physically threatened her. Woods alleges that Lee's discriminatory harrassment created a hostile work environment.

On June 16, 2005, Woods contacted Georgia Pacific regarding the alleged discriminatory harrassment. (Georgia Pacific Ex. B-6.) Following an investigation, Lee did not return to work for five days. Although Georgia Pacific contends that Lee was placed on a week's suspension for the alleged harrassment and discrimination, Woods contends that Mike Maurer and Paul Ferre initially told her that Lee quit. (Georgia Pacific Ex. B-6, Def.'s Ex. 55.) Woods alleges that, upon his return, Lee told one of the drivers that he quit and that Ferre begged him to return to work. (Georgia Pacific Ex. B-6, Def.'s Ex. 57.) According to Woods, the alleged harrassment intensified after she reported the

3

.O 72A
Rev. 8/82)

conduct to Georgia Pacific.

Woods further alleges that Georgia Pacific retaliated against her for reporting the alleged harrassment. Woods alleges that Georgia Pacific subjected her to adverse employment actions, including repeated health insurance audits, a poor job evaluation, and termination.

Woods contacted Jeannie Blaylock, a television news anchor, regarding the alleged discriminatory harrassment. On December 11, 2006, Woods met Blaylock off-site prior to beginning her shift. (Woods' Second Aff. ¶ 11.)   After the meeting, Woods drove to the Sterling mill to begin her work shift and Blaylock, accompanied by a cameraman, drove to the Sterling mill to speak with Lee.   (Id.)   When Blaylock arrived at the mill, Woods had not yet clocked in to begin her shift. Blaylock and the cameraman entered the scale house to interview Lee.   Woods contends that Georgia Pacific security and management witnessed Blaylock and her cameraman in the scale house waiting for Lee to return.   (Id.)

Immediately following this incident, Georgia Pacific terminated Plaintiff's employment.  The stated reason for Woods' termination was that she violated Georgia Pacific's visitation policy by permitting Blaylock and the cameraman

4

inside the scale house.

Plaintiff filed for Chapter 13 Bankruptcy on March 11, 2005. Plaintiff's Chapter 13 plan was confirmed on August 9, 2005, and the proceedings closed on October 31, 2007. (Lisa Michelle Woods Depo. Aug. 2, 2007, Ex. 2.) Plaintiff did not disclose the claims asserted in this action as assets in her financial statement submitted in the bankruptcy proceedings.

Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") on November 28, 2005, alleging racial and sexual discrimination, and retaliation. (Georgia Pacific Ex. B-6.) The EEOC issued a right to sue letter on May 31, 2006.[3]

Woods filed this action on August 28, 2006. Woods asserts claims of racial and sexual hostile work environment and retaliation against Georgia Pacific. Woods also asserts intentional infliction of emotional distress claims against Georgia Pacific and Lee.

Georgia Pacific and Lee filed the instant summary

---

[3] Plaintiff filed a separate EEOC charge of retaliation on April 26, 2007. The claim alleged in the second EEOC charge is included in this action pursuant to the Court's Order granting Plaintiff's motion to amend her complaint. (See Doc. No. 41.)

5

judgment motions on February 5 and 6, 2008, respectively. Defendants argue that Woods' claims are barred by the doctrine of judicial estoppel because Woods failed to disclose the claims in her bankruptcy proceedings. Georgia Pacific and Lee further argue that Woods' claims are barred as a matter of law because Woods cannot establish a prima facie case of discriminatory harrassment or retaliation, or a claim for intentional infliction of emotional distress.

**DISCUSSION**

On a motion for summary judgment, the district court views all facts and reasonable inferences in the light most favorable to the non-moving party.  <u>Miccosukee Tribe of Indians of Fla. v. United States</u>, 516 F.3d 1235, 1243 (11th Cir. 2008).  Summary judgment is only appropriate if the pleadings, depositions, admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).

Under the Federal Rules of Civil Procedure, a court may consider "the pleadings, the discovery and disclosure materials on file, and any affidavits" when rendering a

6

decision on a summary judgment motion.   Fed. R. Civ. P. 56(c).   "[S]upporting or opposing affidavit[s] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated" therein.   Fed. R. Civ. P. 56(e).

Generally, inadmissible hearsay cannot be considered on a motion for summary judgment.   Club Car, Inc. v. Club Car (Quebec) Import, Inc., 362 F.3d 775, 783 (11th Cir.), reh'g denied, 111 Fed. Appx. 1003, cert. denied, 543 U.S. 1002, 125 S. Ct. 618, 160 L. Ed. 2d 461 (2004).   Therefore, "[o]n motions for summary judgment, [the court] may consider only that evidence which can be reduced to an admissible form. Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005) (citing Macuba v. Deboer, 193 F.3d 1316, 1324-25 (11th Cir. 1999) (although evidence that is otherwise admissible may be accepted in an inadmissible form at summary judgment stage, hearsay could not be reduced to admissible form)).   However, once the district court determines that an affidavit is admissible, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether

7

he is ruling on a motion for summary judgment or for a directed verdict.  The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Reese v. Herbert,  2008 WL 2066521, *10 (11th Cir. May 16, 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986)) (internal quotation marks omitted).

## I.    **Admissibility of Evidence Submitted by Plaintiff**

As an initial matter, the Court must address the admissibility of certain evidence submitted by Plaintiff in opposition to the Defendants' motions for summary judgment. Georgia Pacific filed a notice of objection and motion to strike certain affidavit and declaration testimony submitted by Plaintiff.  (See Doc. No. 116.)   While the Magistrate Judge dismissed the motion to strike, the Court must evaluate the admissibility of the challenged evidence to the extent the Court relies on the evidence in deciding the instant summary judgment motions.

## A.    **Plaintiff Affidavits**

Defendants object to portions of Plaintiff's second,

8

third, and fourth affidavits. Specifically, Defendants allege that Plaintiff's affidavits contain statements that directly contradict her sworn deposition testimony. Defendants further allege that numerous paragraphs in Plaintiff's affidavits consist of self-serving, conclusory allegations that are unsupported by the facts. Finally, Defendants allege that certain paragraphs in Plaintiff's third affidavit contain inadmissible hearsay.

### 1. Alleged Inconsistent Affidavit Testimony

The well-established rule in this Circuit is that, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Allen v. Bd. of Pub. Educ. for Bibb County, 495 F.3d 1306, 1316 (11th Cir. 2007)(quoting Van T. Junkins and Assoc., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984))(internal quotation marks omitted). Therefore, when an affidavit is contradictory to the extent that it is "inherently inconsistent" with deposition testimony, a court should

9

disregard that affidavit as a sham and exclude it from the evidence considered. Id. (quoting Tippens v. Celotex Corp., 805 F.2d 949, 954 (11th Cir. 1986)).  However, this rule is applied "sparingly" and only those affidavit statements which are "inherently inconsistent" with earlier deposition testimony should be disregarded on a motion for summary judgment. Keaton v. Cobb County, 545 F. Supp. 2d 1275, 1295 (N.D. Ga. 2008) (citing Rollins v. TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987)); see also Lane v. Celotex Corp., 782 F.2d 1526, 1531 (11th Cir. 1986).  Accordingly, an affidavit which merely is "at odds with statements made in an early deposition" should not be excluded. Tippens, 805 F.2d at 954.

Upon review of the challenged portions of Plaintiff's affidavits, the Court concludes that the deposition testimony at issue is not inherently inconsistent within the meaning of the sham affidavit rule.  To the extent there are inconsistencies and/or ambiguity in Plaintiff's testimony, she has offered sworn testimony clarifying and explaining the discrepancies in her testimony. When statements in a party's affidavit differ or vary from its other evidence before the court, the discrepancies create an issue of credibility, or

10

go to the weight of the evidence, and should be resolved by the trier of fact. See Tippens, 805 F.2d at 954.

## 2. Alleged Self-Serving Conclusory Testimony

It is clearly established in this Circuit that self-serving statements alone do not create a genuine issue of material fact. Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005); Smith v. Fed. Express Corp., 191 Fed. App'x 852, 855 (11th Cir.), reh'g denied, 213 Fed. App'x 971 (2006), cert. denied, 127 S. Ct. 1919, 167 L. Ed. 2d 573 (2007). This principle is consistent with "the rule that a mere scintilla of evidence is insufficient to present a question for the jury." United States v. Davis, 809 F.2d 1509, 1513 (11th Cir. 1987) (citation and internal punctuation omitted). However, as previously noted, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" Reese, 2008 WL 2066521 at *10 (quoting Anderson, 477 U.S. at 255, 106 S. Ct. at 2513) (internal quotation marks omitted). Thus, the trial court is not permitted to take a case from the trier of fact because it doubts the credibility of a witness.

11

Upon review of the challenged portions of Plaintiff's affidavits as self-serving, the Court concludes that Defendants' objections go to credibility. Thus, Defendants' objections as to any alleged self-serving, conclusory allegations contained in Plaintiff's second, third, and fourth affidavits are overruled.

### 3.    Alleged Inadmissible Hearsay Testimony

Hearsay is "an out-of-court statement offered to prove the truth of the matter asserted." Fed. R. Evid. 801(c); Cargill v. Turpin, 120 F.3d 1366, 1373 (11th Cir.), reh'g denied, 131 F.3d 157 (1997), cert. denied, 523 U.S. 1080, 113 S. Ct. 1529, 140 L. Ed. 2d 680 (1999) (citations omitted). An out of court statement is inadmissible unless the statement falls into one of the hearsay exceptions enumerated in the Federal Rules of Evidence. United States v. Baker, 432 F.3d 1189, 1203 (11th Cir. 2005).   Generally, inadmissible hearsay cannot be considered on a motion for summary judgment. Club Car, Inc., 362 F.3d at 783.

Defendants argue that paragraphs 7 and 13 of Plaintiff's third affidavit are inadmissible hearsay. In paragraph 7, Plaintiff states:

12

> Because I feared that Lee might harm me or
> my family, I sought protection from Special
> Agent Tony Alig of the FBI.   On one
> occasion, while I was at his office, Agent
> Aug[sic] called Lee's alleged "fixer" (the
> former boyfriend of convicted felon Rebecca
> Vinson).   Agent Alig asked the "fixer"
> whether he knew Lee, and the fixer said
> yes.   The fixer said that Lee was the kind
> of friend that he would do anything for.

(Pl.'s Ex. L ¶ 7.)   In paragraph 13, Plaintiff states, "I was warned by a co-worker at the facility, Norwood Burton, that Lee had said he was having me followed 'to protect Georgia-Pacific.'" (Pl.'s Ex. L ¶ 13.)

Paragraphs 7 and 13 of Plaintiff's third affidavit are admissible in support of Plaintiff's opposition to Defendant's summary judgment motion.   Central to the Court's determination is the purpose for which the testimony was offered. Plaintiff's testimony may be inadmissible hearsay for the purpose of demonstrating that the "fixer" was friends with Lee and that the fixer would do anything for him, or that Lee in fact had Plaintiff followed.   The testimony would be admissible, however, to demonstrate that Plaintiff believed these things to be true and perceived Lee to be physically threatening.   See Fed. R. Evid. 801(c) Advisory Committee Note ("If the significance of an offered statement lies solely in the fact that it was made, no issue

13

is raised as to the truth of anything asserted, and the statement is not hearsay."). Thus, Defendants' objections to paragraphs 7 and 13 of Plaintiff's third affidavit as inadmissible hearsay are overruled.

**B.   Donald Jones Affidavit & Annie Lewis Declaration**

Defendants also object to certain statements contained in Donald Jones' affidavit and Annie Lewis' declaration as inadmissible hearsay.  Specifically, Defendants object to the statement in Lewis' declaration that Georgia Pacific received proof of Plaintiff's children's dependency status in response to requests for such documents.  Defendants also object to the following statements contained in Jones' affidavit: that Jones saw Lee lock Plaintiff out of the computer; that Jones' knew that Lee told another person that Lee knew where Plaintiff and her mother lived, and where Plaintiff's children went to school; and that Jones saw Lee let white drivers use the scale house bathroom.  Defendants argue that the statements are inadmissible because Lewis and Jones have no personal knowledge of these matters.  While Defendants couch their objections as being based on hearsay, to which Plaintiff concedes may be true, Defendants are

14

actually objecting to the veracity of these statements because of the parties lack of personal knowledge of these matters.  Defendants' challenges as to witness credibility must be resolved by the trier of fact.  Thus, Defendants' objections to Jones' and Lewis' affidavits are overruled.


## II.  **Judicial Estoppel**

Judicial estoppel is an equitable doctrine wherein a party is precluded from "'asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.'"  Ajaka v. Brooksamerica Mortg. Corp., 453 F.3d 1339, 1344 (11th Cir. 2006) (quoting Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002)); see also New Hampshire v. Maine, 532 U.S. 742, 749, 121 S. Ct. 1808, 1814, 149 L. Ed. 2d 968 (2001) (quoting Davis v. Wakelee, 156 U.S. 680, 689, 15 S. Ct. 555, 39 L. Ed. 578 (1895)).  "In the context of a bankruptcy case, judicial estoppel bars a plaintiff from asserting claims previously undisclosed to the bankruptcy court where the plaintiff both knew about the claims and had a motive to conceal them from the bankruptcy court."  Muse v. Accord

15

Human Res., Inc., 129 Fed. App'x 487, 488 (11th Cir. 2005)
(citing DeLeon v. Comcar Indus., Inc., 321 F.3d 1289, 1291
(11th Cir. 2003)).  The Eleventh Circuit has made clear that
judicial estoppel is only applicable when the plaintiff had
a duty to disclose the claims to the bankruptcy court.  Id.

A debtor seeking shelter under the bankruptcy laws must
disclose all assets, or potential assets, to the bankruptcy
court. Burnes, 291 F.3d at 1286 (citing 11 U.S.C. § 521(1),
541(a)(7)).  This duty to disclose "includes all potential
causes of action existing at time petitioner files for
bankruptcy." Barger v. City of Cartersville, 348 F.3d 1289,
1292 (11th Cir. 2003) (citing 11 U.S.C.A. § 541(a)).
However, a debtor has no duty to disclose a claim that
accrues post-confirmation in the absence of an "assertion
that it was necessary for the plan." Muse, 129 Fed. Appx.
at 490.

In the instant case, Plaintiff alleges that she was
subjected to a hostile work environment predicated on both
racial and sexual harrassment.  Unlike discrete acts of
discrimination, the very nature of a hostile work
environment claim involves repeated conduct.  Nat'l R.R.

16

Passenger Corp. v. Morgan, 536 U.S. 101, 115, 122 S. Ct. 2061, 2073, 153 L. Ed. 2d 106 (2002). Thus, these "claims are based on the cumulative effect of individual acts." Id. at 115, 122 S. Ct. at 2073.

Although Plaintiff alleges in her complaint that the harrassment began in November 2004, almost four months before she filed her bankruptcy petition, she did not file a charge of discrimination with the EEOC until December 2, 2005, or commence this lawsuit until August 28, 2006, more than a year after her Chapter 13 plan was confirmed.[4] Plaintiff's action did not accrue until post-confirmation because her claims are based on the cumulative effect of Lee's harrassment. Therefore, it was not property of the estate. Accordingly, in the absence of an assertion that the claims in this action were necessary for the confirmation plan, Plaintiff is not judicially estopped from bringing her employment discrimination claims against Defendants in the instant case.

**III.     Hostile Work Environment**

Title VII of the Civil Rights Act of 1964, 42 U.S.C.A.

---

[4]

Plaintiff filed for Chapter 13 Bankruptcy on March 11, 2005. Plaintiff's Chapter 13 plan was confirmed on August 9, 2005.

O 72A
(ev. 8/82)

§ 2000e et seq., prohibits employment discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1).  The ground for a Title VII harassment claim can be either a tangible employment action or, as Plaintiff asserts here, the "creation of a hostile work environment caused by [racial and] sexual harassment that is sufficiently severe or pervasive to alter the terms and conditions of work."  See Reeves v. C.H. Robinson Worldwide, Inc., 525 F.3d 1139, 1143 (11th Cir. 2008) (quoting Baldwin v. Blue Cross/Blue Shield of Ala., 480 F.3d 1287, 1300 (11th Cir.), reh'g denied, 254 Fed. App'x 800, cert. denied, 128 S. Ct. 499, 169 L. Ed. 2d 341 (2007)); see also Nurse "BE" v. Columbia Palms W. Hosp. Ltd. P'ship, 490 F.3d 1302, 1308 (11th Cir. 2007).

In order to recover under the hostile work environment theory, an employee must demonstrate that: (1) she belongs to a protected group; (2) she has been subject to unwelcome harassment; (3) the harassment was based on her membership in a protected group; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive working environment; and (5) a basis for holding the employer liable exists.  Reeves,

18

525 F.3d at 1143; Webb-Edwards v. Orange County Sheriff's Office, 525 F.3d 1013, 1026 (11th Cir. 2008) (quoting Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc)).  Only the fourth and fifth elements are at issue in the instant motion.

## A.  **Severe or Pervasive**

Determining whether the harassment was sufficiently severe or pervasive involves "both an objective and subjective component."  Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002).  In determining the objective element, a court looks to "'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  Nat'l R.R. Passenger Corp., 536 U.S. at 116, 122 S. Ct. at 2074 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 371, 126 L. Ed. 2d 295 (1993)); see also Miller, 277 F.3d at 1275.

19

The Eleventh Circuit has held that the failure to establish one of the four factors does not preclude a judgment in favor of the plaintiff because focusing on a single factor "loses sight of the totality of the circumstances approach" adopted by the court. Miller, 277 F.3d at 1276. "[A] hostile work environment claim addresses acts [] whose 'very nature involves repeated conduct,' such as 'discriminatory intimidation, ridicule, and insult.'" McCann v. Tillman, 526 F.3d 1370, *7 (11th Cir. May 9, 2008) (quoting Morgan, 536 U.S. at 114-16, 122 S. Ct. 2061). However, "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283, 141 L. Ed. 2d 662 (1998) (internal citations omitted). Furthermore, the Supreme Court has held that Title VII "does not set forth a general civility code for the American workplace." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006) (citation and internal quotations omitted).

Plaintiff alleges that she was subjected to both racial

20

and sexual harrassment by Defendants.  The Court has no
doubt that Woods subjectively perceived the harrassment to
be sufficiently severe or pervasive to violate Title VII.
Therefore, the issue before the Court is whether Plaintiff's
perception was objectively unreasonable as a matter of law.

### 1.  Racial

Woods alleges that she suffered the following harassment
of a racial nature: Lee became angry with Woods for her
failure to coil a water hose or electrical cord in such a
fashion that the two different colors on the hose or cord
"did not mix"; Lee told Woods that the "blacks should line
up together" and admitted to saying he does not believe
blacks and whites should mix; Lee received from his wife,
printed, and may have posted a picture of a pregnant ape in
the Scale House, and laughed about it in the presence of
Woods and others (Woods had recently been pregnant and had
suffered a miscarriage), while saying that the picture
resembled Woods; on more than one occasion, Lee changed the
cursor on the Scale House computer to a self-peeling banana;
Lee, on several occasions, brought a banana to work and left
it on the Scale House desk used by both Lee and Woods; Lee

21

referred to a very black man as a "blue gum" and told Woods that "crosses aren't burned for nothing"; Lee told Woods she needed a "bushier" hair-do, suggesting that it was inappropriate for Woods to wear her hair in a "White" style; Lee monitored and screened Woods' phone calls; Lee repeatedly accused Woods of stealing; Lee expressed his anger at black people by suggesting that "Blacks get all the breaks from the government"; Lee locked Woods out of the Scale House computer causing her to perform her job poorly as trucks backed up waiting to enter the facility; Lee humiliated Woods by questioning vendors and visitors to the facility about Woods' job performance; and Lee posted an "out of order" sign on the Scale House bathroom door and a "do not use" sign on the toilet seat and proceeded to operate what was, in effect, a "Whites Only" bathroom, denying numerous Blacks the use of the Scale House toilet.

Plaintiff further alleges that Lee made several statements that Plaintiff perceived as threatening. Plaintiff alleges that Lee told her not to move to Hortense "because there are no black people in Hortense. I live in Hortense and I know that there are no black people living

AO 72A
(Rev. 8/82)

there.  There is one family . . ., but they know not to come out after dark."   (July 1, 2005 EEOC Charge of Discrimination, Attach. A.)  Plaintiff also alleges that Lee told her that "crosses are not burnt for nothing."  (Id.) Plaintiff alleges that "Lee made it clear that he could hurt me if he so chose.  Lee once told me, in a menacing manner, that he had a friend, a 'fixer,' who could take care of problems for him, illegally, if necessary."  (Woods' Second Aff. ¶ 41.)   Finally, Plaintiff alleges that a Georgia-Pacific vendor advised her to take alternate routes to and from Claxton, even drawing a map, because he was afraid that Lee and Lee's friends would ambush or injure Plaintiff. (Id. ¶ 45.)

Construing the evidence in the light most favorable to Plaintiff under the totality of the circumstances approach adopted by the Eleventh Circuit, the four factors (frequency, severity, physical threat or humiliation, and interference with job performance) weigh in Plaintiff's favor.   Accordingly, a reasonable jury could find the harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.  Therefore, Defendants are not

AO 72A
(Rev. 8/82)

entitled to summary judgment as to Plaintiff's hostile work environment claim on this ground.

### 2.   Sexual

Plaintiff further alleges that Lee subjected her to a hostile work environment predicated on her sex.   Plaintiff alleges that she suffered the following harassment of a sexual nature: Lee left a lewd magazine in the scale house; Lee often listened to sexually-lewd and racially-offensive XM Radio in the Scale House while Woods was present; Lee referred to his penis as "shorty" in the presence of Woods and others; Lee received from his wife, printed, and may have posted a picture of a pregnant ape in the Scale House, and laughed about it in Woods' presence and in the presence of others (Woods had recently been pregnant and had suffered a miscarriage), while saying that the picture resembled Woods; and Lee made cruel jokes and laughed about Woods' miscarriage.   (Woods Depo. 210:1-235:1.)

Construing the evidence in the light most favorable to Plaintiff under the totality of the circumstances approach the factors arguably weigh in Plaintiff's favor as to her hostile work environment claim predicated on her sex.

24

AO 72A
(Rev. 8/82)

Although the magazine, "shorty" reference, and pregnancy references are, without doubt, distasteful, these incidents did not appear to have occurred with sufficient frequency to satisfy the frequency factor. Nevertheless, in light of the additional allegation that Lee "often" listened to sexually-lewd XM Radio in the Scale House while Woods was present, this factor arguably weighs in Plaintiff's favor. Although the alleged conduct may be particularly offensive to women, it does not appear to be of the severity the Eleventh Circuit has previously deemed actionable under the severity factor. Thus, the severity factor weighs in Defendants' favor. Additionally, while the alleged sexually discriminatory conduct was not physically threatening, a jury could find that the radio programming and pregnancy references particularly humiliating in light of Plaintiff's recent miscarriage. Thus, this factor weighs in favor of Plaintiff. Finally, a reasonable jury could find that the alleged conduct interfered with Plaintiff's job performance. Defendants argue that this factor should weigh in their favor because Plaintiff received positive performance reviews. However, to satisfy this factor, Plaintiff need not demonstrate that the conduct tangibly affected her job

25

performance.   See Reeves, 525 F.3d at 1147 (citing Harris, 510 U.S. at 22, 114 S. Ct. at 371).

Although the alleged conduct as it relates to Plaintiff's sexual harrassment claim does not appear as egregious as that related to Plaintiff's racial discrimination claim, the Court, having considering the four factors in light of the totality of the circumstances, concludes that a reasonable jury could find the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive working environment.   As the Eleventh Circuit recently noted in Reeves, "a work environment viewed as a whole may satisfy the legal definition of an abusive work environment, for purposes of a hostile environment claim, even though no single episode crosses the Title VII threshold."   Reeves, 525 F.3d at 1147 (quoting Williams v. Gen. Motors Corp., 187 F.3d 553, 564 (6th Cir. 1999)).   Plaintiff has presented sufficient evidence to survive summary judgment and, therefore, Defendants are not entitled to summary judgment as to Plaintiff's hostile work environment claim on this ground.

26

**B.     Employer Liability**

Georgia Pacific argues that even if the Court finds that

Plaintiff has presented sufficient evidence to show that the

harassment she allegedly suffered was severe or pervasive,

Georgia Pacific is not liable under the Faragher/Ellerth

affirmative defense.   See  Faragher, 524 U.S. 775, 118 S.

Ct. 2275; Burlington Indus., Inc. v. Ellerth, 524 U.S. 742,

118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998).    In order to

avoid liability under this defense, the burden is on the

employer to establish: (1) that it exercised reasonable care

to prevent and promptly correct any harassing behavior; and

(2) that the employee unreasonably failed to take advantage

of any preventative or corrective opportunities provided by

the employer.   Nurse "BE", 490 F.3d at 1308-09; Faragher,

524 U.S. at 807, 118 S. Ct. 2275; Ellerth, 524 U.S. at 765,

118 S. Ct. 2257.

It is undisputed that Georgia Pacific had a harassment

policy in place.  However, the existence of said policy does

not  automatically  satisfy  the  employer's  burden.    See

Faragher, 524 U.S. at 808, 118 S. Ct. at 2293 (denying an

employer the affirmative defense because employer "entirely

failed   to   disseminate   its   policy   against   sexual

27

harassment"). For a remedial measure offered by an employer to be reasonable, for purposes of the Faragher/Ellerth affirmative defense to a Title VII harassment claim, it is enough if the measure is reasonably likely to prevent the misconduct from recurring. Baldwin, 480 F.3d at 1305 (quoting Kilgore v. Thompson & Brock Mgmt., Inc., 93 F.3d 752, 754 (11th Cir. 1996)) (quotation marks omitted).

As to the second element of the defense, "the employer must show that 'the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" Baldwin, 480 F.3d at 1306 (quoting Faragher, 524 U.S. at 807, 118 S. Ct. at 2293; Ellerth, 524 U.S. at 765, 118 S. Ct. at 2270). An employer may often satisfy its burden as to this element by showing that the employee failed to follow the employer's complaint procedures. Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1314 (11th Cir. 2001) (citing Madray v. Publix Supermarkets, Inc., 208 F.3d 1290, 1302 (11th Cir.2000). "However, in some cases, the proof will show that the employee's non-compliance was reasonable under the circumstances and, in these cases, the defendant cannot satisfy the second

AO 72A
(Rev. 8/82)

element of the affirmative defense."   Id.

The record contains factual disputes as to whether there were extenuating circumstances that might explain why Woods failed to utilize the complaint procedures.   Frederick, 246 F.3d at 1316 (citing Greene v. Dalton, 164 F.3d 671, 674-75 (D.C. Cir. 1999) (district court invaded the province of the jury in awarding summary judgment to defendant when defendant had not demonstrated that employee's delay in filing a complaint was unreasonable)).   For one, Woods contends that she did not report her complaint in accordance with these policies because Lee told her that Ferre was his close friend and would support whatever Lee did.   Woods also alleges that she later found out that Lee was not disciplined for harassing her, and that the harassment escalated after reporting it to Georgia Pacific.   Georgia Pacific, in contrast, claims that Lee was suspended for five days for the alleged incidents.   Importantly, the facts relevant to Woods' conversations with Lee turn on assessments of witness credibility, which by definition cannot be resolved at summary judgment.   Thus, there are two issues of disputed fact that could explain why Woods failed to utilize Georgia Pacific's complaint procedures.   Because

29

the facts in the record support several different
interpretations that could prevent Georgia Pacific from
establishing the Faragher/Ellerth defense, summary judgment
on this ground is inappropriate.

## IV.  **Retaliation**

Title VII makes it unlawful for an employer to retaliate
against an employee "because [s]he has opposed any practice
made an unlawful employment practice" by Title VII.   42
U.S.C. § 2000e-3(a).   "[A]n employee need not prove the
underlying claim of discrimination for the retaliation claim
to succeed." Muggleton v. Univar USA, Inc., 249 Fed. Appx.
160, 163 (11th Cir. 2007) (citing Sullivan v. Nat'l R.R.
Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999)).

The Eleventh Circuit has held that a plaintiff must show
three things to establish a prima facie case of retaliation:
(1) she engaged in a statutorily protected expression; (2)
she suffered an adverse employment action; and (3) there is
"a causal link between the protected expression and the
adverse action." Id.  An adverse employment action for
purposes of Title VII must either be an ultimate employment
decision, "such as termination, failure to hire, or

30

demotion," or else "must, in some substantial way, alter the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee." Crawford v. Carroll, 2008 WL 2246677, *6 (11th Cir. June 03, 2008) (citations and internal punctuation omitted).

The causal link element is construed "broadly so that 'a plaintiff merely has to prove that the protected activity and the . . . [adverse] action are not completely unrelated.'" Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004) (quoting Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998)); Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000), cert. denied, 532 U.S. 1037, 121 S. Ct. 1998, 149 L. Ed. 2d 1001 (2001). To make this showing, a plaintiff must generally establish "that the decision maker was aware of the protected conduct at the time of the adverse employment action." Higdon, 393 F.3d at 1220. Close temporal proximity between protected conduct and an adverse employment action is generally "sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." Hurlbert v. St. Mary's Health Care

31

Sys., Inc., 439 F.3d 1286, 1298 (11th Cir. 2006) (quoting Brungart, 231 F.3d at 799).[5]

If the plaintiff establishes a prima facie case, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for the adverse action. Crawford v. City of Fairburn, 482 F.3d 1305, 1308 (11th Cir.), cert. denied, 128 S. Ct. 495, 169 L. Ed. 2d 340 (2007). If the employer meets this burden, then the plaintiff must show that the employer's proffered reason is mere pretext for retaliation. Id. To show pretext, the plaintiff must present sufficient evidence "to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997), cert. denied, 522 U.S. 1045, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998). Furthermore, conclusory allegations, without more, are insufficient to show pretext. Mayfield v. Patterson Pump

---

[5]   "An exception to this rule applies where there is 'unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct[.]'" Hurlbert, 439 F.3d at 1298 (citing Brungart, 231 F.3d at 799). However, in the instant case, genuine issues of material fact preclude application of this exception.

Co., 101 F.3d 1371, 1376 (11th Cir. 1996).   Instead, the
plaintiff must meet the proffered reason "head on and rebut
it."   Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir.
2000)).

Plaintiff has offered a prima facie claim of retaliation
with regard to the healthcare benefit audits and her
termination.   Plaintiff also claimed her November 28, 2006
job evaluation constituted an adverse employment action.
The Court finds the evaluation fails to meet the threshold
level of substantiality as a matter of law.   See Crawford,
2008 WL 2246677 at *7.   Plaintiff received a "meeting
expectations" performance evaluation.   (2006 Performance
Review Summ., Georgia Pacific Ex. B-6.)   In the absence of
any evidence indicating that the evaluation disentitled
Plaintiff to any benefit, the evaluation itself does not
satisfy the substantiality requirement.   Cf. Gillis v. Ga.
Dep't of Corr., 400 F.3d 883, 888 (11th Cir. 2005).

Plaintiff filed charges with the EEOC on November 28,
2005, alleging racial and sexual discrimination, and
retaliation.   (Georgia Pacific's Ex. B-6.)   The EEOC issued

33

a right to sue letter on May 31, 2006.[6]   Plaintiff was subject to three health insurance audits within a one-year period of time.   (Woods' Second Aff. ¶ 13.)   Additionally, Plaintiff was terminated on the same day that she met with Blaylock.   Construing the evidence in the light most favorable to Plaintiff as required under summary judgment, a reasonable jury could find that these acts were in retaliation for her having filed a charge with the EEOC and speaking to the media about the alleged discrimination. Furthermore, notwithstanding Georgia Pacific's proffered legitimate, non-discriminatory reasons for these actions, the Court concludes that a reasonable trier of fact could find that the reasons given by Georgia Pacific were not the real reasons for the adverse employment actions.   Thus, summary judgment on Plaintiff's retaliation claim is not appropriate.

## V.   Intentional Infliction of Emotional Distress

In order to prove a claim for intentional infliction of

---

[6]
Plaintiff filed a separate EEOC charge of retaliation on April 26, 2007.  The claim alleged in the second EEOC charge is included in this action pursuant to the Court's Order granting Plaintiff's motion to amend her complaint.  (See Doc. No. 41.)

AO 72A
(Rev. 8/82)

emotional distress under Georgia law, Plaintiff must establish (1) intentional or reckless infliction of mental suffering; (2) extreme and outrageous conduct; (3) a causal connection between the wrongful conduct and the mental suffering; and (4) the suffering was severe. See Udoinyion v. Re/Max of Atlanta, 289 Ga. App. 580, 584, 657 S.E.2d 644, 648 (2008). Defendants contend summary judgment on Plaintiff's intentional infliction of emotional distress claim is appropriate because the alleged conduct was not intentional or reckless, or sufficiently extreme or outrageous under Georgia law. Georgia Pacific further contends that it is entitled to summary judgment because it cannot be held vicariously liable.

## a.   Extreme and Outrageous

In order to satisfy the third element, the plaintiff must show that the alleged "conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Kirkland v. Earth Fare, Inc., 658 S.E.2d 433, 437 (Ga. App. February 29, 2008) (quoting Wilcher v. Confederate

35

Packaging, Inc., 287 Ga. App. 451, 454, 651 S.E.2d 790 (2007)). "Actionable conduct does not include insults, threats, indignities, annoyances, petty oppressions, or other vicissitudes of daily living . . .." Cook v. Covington Credit of Ga., Inc., 660 S.E.2d 855, 858 (Ga. App. April 08, 2008) (quoting Pierce v. Wise, 282 Ga. App. 709, 713, 639 S.E.2d 348 (2006)) (internal quotation marks omitted). "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." Id. (quoting Lockhart v. Marine Mfg. Corp., 281 Ga. App. 145, 147, 635 S.E.2d 405, 407 (2006)) (internal quotation marks omitted).

The burden which the plaintiff must meet in order to prevail in this cause of action is a stringent one. In order to sustain a cause of action under Georgia law for the tort of intentional infliction of emotional distress, a plaintiff must show that defendant's conduct "g[a]ve rise to such intense feelings of humiliation, embarrassment, fright, or extreme outrage as to cause severe emotional distress." Nelson v. Glynn-Brunswick Hosp. Auth., 257 Ga. App. 571, 577, 571 S.E.2d 557, 562 (2002) (citing Fitzgerald v.

36

AO 72A
(Rev. 8/82)

Caplan, 184 Ga. App. 567, 568, 362 S.E.2d 103 (1987));
Alexander v. A. Atlanta Autosave, Inc., 272 Ga. App. 73, 77-
78, 611 S.E.2d 754, 758 (2005) (citing Ingram v. JIK Realty
Co., 199 Ga. App. 335, 336-337(1), 404 S.E.2d 802 (1991)).

Upon review of the record, the Court concludes that
there is sufficient evidence, if believed, upon which a
trier of fact could conclude that Lee's conduct was
intentional or reckless, and of the requisite level of
outrageousness or egregiousness to support Plaintiff's claim
of emotional distress.  In addition to offering evidence
that Lee subjected Plaintiff to insult and ridicule,
Plaintiff has offered evidence that Lee subjected her to
intimidation and humiliation.  Therefore, Lee is not
entitled to summary judgment on this claim.

**b.   Respondeat Superior**

Under the principle of respondeat superior, an employer
is liable for negligent or intentional torts committed by an
employee in furtherance of and within the scope of the
employer's business.  Piedmont Hosp. v. Palladino, 276 Ga.
612, 613, 580 S.E.2d 215, 217 (2003) (citing O.C.G.A. § 51-

AO 72A
(Rev. 8/82)

2-2). The employer is not liable on the basis of respondeat superior for an employee's tort committed "not in furtherance of the employer's business, but rather for purely personal reasons disconnected from the authorized business of the master[.]" Dowdell v. Krystal Co., 2008 WL 1776990, *2 (Ga. App. April 21, 2008) (quoting Piedmont Hosp., 276 Ga. at 613-614, 580 S.E.2d at 217).

Plaintiff argues that Georgia Pacific should be estopped from denying liability for Lee's conduct because Georgia Pacific had notice of Plaintiff's complaints and failed to take adequate remedial action. It is clearly established under Georgia law "that an employer cannot, by ratification, assume liability for the tortious acts of an employee done for purely personal reasons entirely disconnected from the employer's business." Travis Pruitt & Assocs., P.C. v. Hooper, 277 Ga. App. 1, 4, 625 S.E.2d 445, 449 (2005). There is no evidence in the record that Lee's alleged harassment was directed at Woods for any reason other than purely personal reasons entirely disconnected from Georgia Pacific's business. Thus, while Lee may be held liable for his actions, Georgia Pacific cannot be held liable for Lee's actions. See id.; see also Piedmont Hosp., 276 Ga. at 614,

38

580 S.E.2d at 217.

**CONCLUSION**

The Court has read and considered the positions of all parties to this action.  For the reasons set forth above, Georgia Pacific's summary judgment motion (Doc. No. 87) is **GRANTED IN PART and DENIED IN PART**.  Georgia Pacific's motion for summary judgment on Plaintiff's intentional infliction of emotional distress claim as to Georgia Pacific is **GRANTED**.  Georgia Pacific's motion for summary judgment on Plaintiff's remaining claims is **DENIED**.  Lee's summary judgment motion (Doc. No. 90) is **DENIED**.

**SO ORDERED** this <u>19th</u> day of June, 2008.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA